# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:18-cr-311-MOC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | )<br>) |
| vs. | )<br>) **ORDER** |
| **COLE ANTHONY PARKS,** | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 354). The Government has responded in opposition to the motion.

## I. BACKGROUND

Defendant, a 37-year-old white male, is serving a term of 57 months of imprisonment after pleading guilty on September 23, 2019, to conspiracy to commit wire fraud and mail fraud; wire fraud; and conspiracy to commit money laundering. (Doc. No. 107). According to the Bureau of Prisons website, Defendant's scheduled release date is December 8, 2022.

When Defendant filed his pending motion, he was incarcerated at FCI McDowell in West Virginia. He has since been transferred to FTC Oklahoma City in Oklahoma City, Oklahoma. On September 12, 2021, Defendant submitted a request for compassionate release to the Warden at FCI McDowell. (See Gov. Ex. 1 (RIS Request)). In his request, Defendant stated that he has an extensive history of heart problems, including a heart attack in 2006, and that his son has learning disabilities, which places a heavy burden on his wife, who is trying to balance his son's education and her own work. (Id.). Further, Defendant noted that with the COVID-19 virus spiking, he fears for his life and his family's future. (Id.).

1

On September 15, 2021, the Warden at FCI McDowell denied Defendant's request for compassionate release, finding that COVID-19 does not warrant early release and Defendant's concerns with respect to his prior heart attack and his son do not meet the criteria under 18 U.S.C. § 3582(c)(1)(A). (See Gov't Ex. 2 (Warden's Response)).

On November 9, 2021, Defendant filed the pending motion, requesting that the Court reduce his sentence, or, in the alternative, allow him to complete the remainder of his sentence in a rehabilitation facility or program of the Court's choosing and at Defendant's expense.[1] Defendant seeks a reduction in sentence based on several factors, including a history of heart problems; that his wife currently bears the sole burden of raising their young son, who has learning disabilities; and that he fears for his life due to the increase in COVID-19 cases. Defendant also asserts that the Court should consider granting him the requested relief because he has served a significantly harder than usual sentence due to COVID-19 and has been subject to acts of staff retaliation at FCI McDowell. Finally, Defendant states that, despite the Court's recommendations to the contrary, he remains incarcerated far away from his family and that it appears he will not be able to participate in the Bureau of Prison's ("BOP") Residential Drug Abuse Program ("RDAP") before his release from prison.

## II. DISCUSSION

A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. United States

---

[1] It appears the Government has conceded exhaustion of BOP remedies.

v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing reduction of sentences under Section 3582(c)(1)(A).[2] As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the Section 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. §1B1.13.

The Sentencing Commission in its application note specifies the types of "extraordinary and compelling reasons" that make a defendant eligible for compassionate release. They include, as relevant here, (1) a "terminal illness"; (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(A)-(B). There are other bases for compassionate release, including based on the defendant's family circumstances. Id., cmt. n.1(C). Specifically, "the death or incapacitation of the caregiver of the defendant's minor child[,]" or "the incapacitation of the defendant's spouse or registered partner when the

---

[2] The Fourth Circuit Court of Appeals held in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020) that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. The McCoy Court explained, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

defendant would be the only available caregiver for the spouse or registered partner." Id. Finally, in addition, to the non-binding policy statement, the Fourth Circuit recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020).

The Court first finds that, to the extent the pending motion is predicated on conditions at FCI McDowell, the motion is moot as Defendant has been transferred away from the facility. See United States v. Sevilla-Acosta, 2020 WL 6589797, at *1 (D. Minn. Nov. 10, 2020) (finding motion for compassionate release was mooted by defendant's transfer to a different facility); United States v. Hooker, 2020 WL 6504539, at *3 (S.D.N.Y. Nov. 5, 2020) (recognizing that arguments relating to conditions at inmate's facility are moot where inmate has been transferred); United States v. Freedland, 2020 WL 4926542, at *6 (E.D. Pa. Aug. 21, 2020) (same).

Even if Defendant's motion is not moot, he has not shown extraordinary and compelling reasons justifying his early release from prison. With respect to COVID-19, as this Court has explained, "the mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction." United States v. Cloud, 2021 WL 354125, at *3 (W.D.N.C. Feb. 2, 2021). Rather, "[t]he conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population." Id. Therefore, "if an inmate has a chronic medical condition that has been identified by the Centers for Disease Control ("CDC") as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of 'extraordinary and compelling reasons.'" Id.

4

Defendant argues he is at a heightened risk of becoming seriously ill from COVID-19 based on heart conditions, including a prior heart attack in 2006. (Doc. No. 354). A review of his BOP medical records indicates only an "unspecified cardiac [history] possible [heart attack]" in 2007, and that Defendant suffers from hypertension, for which he is prescribed medication. (Doc. No. 382, Gov't Ex. 1 (BOP Medical Records), at p. 30). According to the medical records, on August 30, 2021, Defendant was stable on his current medications, with no side effects or new complaints with respect to his hypertension. (Id. at p. 3). The records show that Defendant takes Aspirin for "unspecified" heart disease, with no record of any recent heart-related medical issues. Defendant also received a two-dose regimen of the Pfizer COVID-19 vaccine. (Id. at p. 80).

The CDC states that heart conditions "such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." See CDC, COVID-19: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 14, 2021). Courts largely have denied motions for compassionate release based on hypertension because the possibility of health risks due to COVID-19 is too speculative to warrant relief. See, e.g., United States v. Harris, 989 F.3d 908, 912 (11th Cir. 2021) (the district court did not abuse its discretion in denying relief where the defendant presented hypertension, which is now classified by the CDC as only possibly presenting a risk); United States v. Jackson, 2021 WL 1400937, at *3 (11th Cir. Apr. 14, 2021) (the district court did not abuse its discretion in denying relief based on high pressure where CDC has stated that risk is only potentially higher and defendant was receiving medical treatment while in custody). As such, Defendant's request for compassionate release based on

5

COVID-19 and his asserted heart conditions do not satisfy the standard of extraordinary and compelling reasons.

Moreover, although the Government does not mention it in its response, Defendant's medical records indicate he has been fully vaccinated. See (Doc. No. 382-1 at 1, 80, 109–110). Where inmates have received a vaccine effective at preventing COVID-19, the risks associated with that virus do not constitute extraordinary and compelling reasons justifying early release. United States v. Burks, 2021 WL 1394857, at *3 (W.D.N.C. Apr. 13, 2021) ("Given that Defendant has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition . . . ."); United States v. Williams, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) ("Being vaccinated against COVID-19 seriously undermines Defendant's assertion that 'extraordinary and compelling reasons' warrant his release from prison.").

Defendant also seeks early release because his son has learning disabilities and his wife is having to balance work and his education needs alone. Under U.S.S.G. § 1B1.13, a defendant's family circumstances can be a basis for relief. However, as noted above, typically that includes "the death or incapacitation of the caregiver of the defendant's minor child[,]" or "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Id. cmt. n.1(C). Here, there is no evidence that Defendant's wife is incapacitated and therefore cannot provide care to their minor child. Defendant's wife no doubt bears a heavy burden in providing for their son's education while also working. However, the same is true for anyone left to temporarily provide for their family because their spouse is incarcerated, and this is not an extraordinary and compelling reason for release. See, e.g., United States v. Javed, 2020 WL 7090322, at *4 (E.D. Mich. Dec. 4, 2020) (concluding that defendant's claimed family circumstances—that his wife is caring for

their three children with learning disabilities by herself while managing huge financial responsibilities—did not warrant release).

Finally, in his motion, Defendant also references alleged "acts of staff retaliation" at FCI McDowell. Because Defendant has been transferred away from FCI McDowell, his claim based on mistreatment is moot and is, in any event, not relevant to a motion for compassionate release. Moreover, even assuming Defendant was subject to retaliation or other staff misconduct at FCI McDowell, release from prison is not the appropriate remedy. See, e.g., Cook v. Hanberry, 596 F.2d 658, 660 (5th Cir. 1979) (denying a prisoner's request, pursuant to 28 U.S.C. § 2255, for release due to alleged mistreatment).

Finally, as for Defendant's statements about not being able to participate in drug abuse treatment, Defendant's BOP file indicates that Defendant has participated in a BOP non-residential drug abuse program. (Doc. No. 382, Gov. Ex. 2 (BOP Program Review), at p. 1). Although Defendant likely has too little time remaining on his sentence to enter RDAP now, BOP records do not substantiate an inability previously to participate in that program. See id.

Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 354), is **DENIED**.

Signed: January 25, 2022

Max O. Cogburn Jr
United States District Judge